Then we begin with United States v. Schultz. Mr. Biggs. May it please the court. William Biggs, appearing on behalf of Adam Schultz, at issue in this case is criminal sentencing. There are two issues that are related to determinations under the guidelines that ultimately had an effect on the outcome of this case, which is that he got a sentence of 120 months. The two issues, one of which is that a prior sentence of six months was categorized, well, a case was categorized as a prior sentence under the guidelines. I would submit should have counted as relevant conduct under the guidelines. What happened was Mr. Schultz was engaged in a scheme to steal cars using this online exchange called Mannheim to procure a vehicle. Pretty slick scheme, wasn't it? Well, your honor, they certainly had login information that enabled them to buy the, I would submit that the Mannheim software is sophisticated and they are able to, once you have dealer creds, easily move cars between dealers. He was able to obtain, he was able to purchase 19 vehicles, eight of which were not obtained. And in relevant part with this, he was arrested in April of 2021 in a stolen vehicle with instruments of identity theft. He was with another individual who was not a co-conspirator. And subsequent to that event, he's in jail. He's talking about making additional purchases of vehicles via Mannheim. You juxtapose that event with January, just a few months prior, we have the same event. The only difference being there's an evading arrest and the vehicle is not acquired. That vehicle was acquired through Mannheim, whereas the other vehicle was stolen, I guess you could say the old fashioned way. One vehicle stolen physically, one is fraudulently obtained. Under RIND, those are not the same thing. So why shouldn't it have been counted the way it was? Well, your honor, I think it's, that's a very narrow distinction. We are still talking about stealing in the same object. We're talking about stealing cars. It's not like a scenario where we're selling different kinds of drugs. We're involved in a scheme to steal cars. And a key component of that is instruments of identity theft. There's a lot of difference in stealing a car off the street and engaging in a sophisticated operation that can penetrate the computer systems and intercept the delivery of the cars. Those are two different ball games on the face. Can you help me with that? Well, those are distinct factual scenarios, but we're still talking about not only theft, which I know is an abstract idea, but theft of vehicles in particular. And I would submit that if this event had the evading arrest and the prior event did not, this would be categorized as relevant conduct, and he would be getting that evading arrest enhancement. But it did more damage in the criminal history section. And that's why it was included there. I would point out that this, it's not just a situation where the last act was just a few months before, because after he's arrested, he's still talking about Mannheim. He's still trying to acquire more vehicles through Mannheim, though that never seemed to have materialized. So this is an ongoing series of events where he's using multiple methods to obtain vehicles. His goal is the same. He's trying to... He's trying to say the guy's a car thief, and no matter how he does it, it's still one offense. That's right. And I don't think it matters to him whether he's getting them via Mannheim or getting them in person. He's trying to get the vehicles, and he's also involved in using instruments of identity theft to procure additional vehicles. And so, yes, there is a factual distinction, but I think this is precisely the reason we have a same course of conduct as opposed to a common scheme or plan. It's an expanded concept of relevant conduct, and it's not that far off. This is slicing the pastrami very thin to say these are different. We're talking about stealing the same objects. What's the best case that this is the same? Well, Your Honor, I would argue that there are a number of cases that talk about drugs, but I can't give you a case off the top of my head right now as far as this directly on point with this particular thing with theft of cars as opposed to drugs. I think if we had a situation where he was caught shoplifting, okay, and I said, and I would argue that's relevant because it's theft. Well, that's at a level of generality such that it's meaningless. But here, we're talking about really the same thing, and it's certainly the same thing to him, stealing cars. You're talking about drugs. Drugs are generic, whether it's from marijuana to other drugs, but it's still drugs. And here, you're talking about conceptually, you're talking about cars. The only common ingredient is cars. However, one of them is a very sophisticated operation of obtaining the access to the computer system and taking deliveries out of that, running that code. How do you put those two together? See, drugs have a commonality to it that on its face is not here in this case. I think the analogy would be if the drugs were obtained in one method from one supplier and another method from another supplier, but he's still, and in this scenario, it would be the same product. It would be, let's say, all cocaine or all methamphetamine. Here, it's all cars. How do you substitute the cars, drugs, but there was one offense. They developed a very sophisticated operation for intercepting the drugs that were headed, destined for a hospital, whatever. But is that a difference? I would argue no. It's like there was a scheme to steal drugs from a hospital, and then there was... I'm talking about the means of doing so. The sophistication that's required to penetrate a supply chain and actually to get delivery of the drug. Yes, Your Honor. If you had one means of stealing drugs from a hospital, and then you've acquired maybe the same drug from a dealer, and all of that is being sold downstream, I would submit that that would be exactly what course of conduct would cover. It's expanded. It's an expanded concept for drugs and financial crimes, which I think fits perfectly with this scenario here. The other issue before the court relates to whether or not he should have been granted a reduction for a partially completed offense. This, I would point out, is a conspiracy to commit wire fraud. And the wire fraud, if you look at the government's information, they are alleging is the object of the conspiracy, $766,000 worth of vehicles, and not only purchasing them on Mannheim, but obtaining them. And so here we have a situation where not all of that is being accomplished because 8 out of the 19 vehicles were never obtained, and a number of steps would have to take place for those vehicles to be obtained. Do you agree that the clear error standard applies? Because the district court made a statement that all acts had taken place. So just clear error, that's a fact-finding, and to which clear error would apply, and you have to establish clear error. Is that true, or did I state that incorrectly? I do agree that the relevant conduct determination would be reviewed under a clearly erroneous standard. I think the court, I think it's clear from the record that not all the acts had taken place to procure the vehicles. I believe the court may have been saying all the acts necessary to establish a fraud, but not all the acts necessary to procure the vehicles, which is the object offense as indicted by the government here. This is not a substantive, this is a conspiracy to commit fraud, and the way they've alleged it is very broad, which is acquiring, purchasing and acquiring $766,000 worth of vehicles. The government's position is that, well, to establish a fraud, we don't have to establish any loss, but I think that argument runs headlong into the language that discusses a fraud that's part of a larger fraud is where this provision should kick in. If that is correct, then wire fraud, mail fraud, bank fraud, these are big hitters that are used very often by the government for big, big loss amounts that those could just never be used. Those can never be eligible for a partially completed offense reduction. That just can't be right. The Soto case discusses that the partially completed offense reduction is a fact-specific inquiry that resists a precise standard, and I would argue in the fraud context, especially when it's alleged it's a conspiracy, it's not enough that we've just established an offense by committing one act of fraud. I mean, that line of thinking would suggest that had no cars ever left the lot, then he couldn't get a partially completed offense reduction, even though we're trying to gauge the harm by the amount of damage done to the victims, and financial loss is how we gauge that. And if it's sort of irrelevant, whether they got all the cars or they got none of the cars, that seems to defeat the purpose of the guidelines to try to get it real offense conduct. And when it specifically uses the language fraud to argue it doesn't apply in any case where there's no loss required, I believe is gutting this provision of any of applicability in a number of cases where it would be more than appropriate. I would note that the cases, there is some tension I've submitted in some of the cases, but that the cases where the court has found the offense, partially completed offense, to be appropriate have been conspiracy cases. Like John, conspiracy to commit access device fraud, and there was this case that is cited in SOTO, which is McCrumbie, and in that case it was conspiracy to commit bank fraud, and it is described as not just conspiracy to commit an act of bank fraud, conspiracy to commit the bank fraud alleged in the indictment, which was a fraud of over two million dollars, and the court found that that reduction should apply. Ultimately, the court held that that was harmless on a plain error review. Let me take you back to your colleague's question about clear error. Yes. Because that, I think, touches right at the heart of this problem. The trial court has to have a certain latitude to make these kind of judgment calls about sentencing. It's more about, much about art than that's a science. And why does it clear error? The answer to the case, in other words, you not only have to say this, that he was wrong about it or made a mistake about it, but he's clearly wrong. To me, that's an issue. I'll give you a chance to take it on head on. Well, I think it's clearly wrong to say that merely because the acts necessary for fraud take place that this enhancement cannot apply. And I don't think the court was necessarily finding that all the acts necessary for the cars to come had taken place. I think the court was saying all the acts necessary for the fraud hadn't been completed. I think it's clear that the cars had not. More things had to happen to get those remaining cars. Thank you. You've saved time for rebuttal. Thank you, Mr. Jones. Yes, I'll dendifer. And if I mispronounce that, I hope you'll correct me. May it please the court. Elise Alden diaper on behalf of the United States. This court should affirm Mr Schultz is 121 sentence because the district court did not clearly air in finding that the April 2021 state offense was relevant conduct. Or sorry, it was criminal history and not relevant conduct. And to the extent it did air any error, there was harmless under either of this court's homelessness methods. Additionally, the district court did not clearly air in finding that in denying a reduction for a partially completed offense for two reasons supported by the record. First, it's undisputed that the underlying substantive offenses here of wire fraud were completed. That should end inquiry. And this court has never held that a defendant is entitled to this reduction merely because he didn't inflict all of the harm intended. And to the record shows that the conspiracy participants were on the verge of completing all acts necessary to complete most of the remaining steps of the vehicles, which this court found. And that finding is not clearly erroneous. And that would render the reduction inapplicable. Starting with the relevant conduct finding, this court looks at three factors in determining whether an offense is relevant conduct, the degree of similarity, the regularity, and the temporal proximity of the offense. The April offense here was not similar to the extent that this court clearly aired in finding that it was not similar or was not part of the same course of conduct. As this court discussed earlier, the differences were significant. The April offense was not part of the wire fraud scheme. There were different victims involved. There were different accomplices involved. And the government submits that the only thing distinguishing the April offense between the January offense is not the evading arrest. The January offense was clearly connected to the offense here, the offense of conviction. The January offense involved a vehicle that was stolen through the Manheim scheme. It had been purchased on January 18th. He was arrested in that vehicle the very next day. That vehicle also contained paperwork that was pertinent to other purchases that were part of the wire fraud scheme. So it had these clear connections, which you do not have in the April offense. There's nothing else connecting it to the wire fraud scheme. And just as this court has held multiple drug cases, I would direct the court specifically to Lindsey that multiple drug offenses, even if they involve the same types of drugs, doesn't make them sufficiently similar to show that they're part of the same course of conduct. There has to be other meaningful similarities because this court has recognized that almost any offense can be painted in some light similar to the offense of conviction. But the similarities have to be meaningful, and they weren't here. Additionally, regularity was not met. There's no regular or repeated pattern of similar conduct. Mr. Schultz engaged in a specific type of conduct. He engaged in wire fraud scheme and wire fraud thefts. The April offense was not that type of was not that type of theft. So even if there is some faint pattern of engaging in a specific type of conduct, the April offense was not that conduct. So both similarity and regularity are not met here. So just because the temporal proximity is met under this year's one-year benchmark as a whole, the district court's finding was not clearly erroneous. It was more than plausible in light of the record. And even if it wasn't, this court's finding was any error was harmless because the record clearly shows that the district court considered the alternative guideline options specific to this guideline. The court was advised of the impact of this in the response to this second PSR addendum, and the court actually acknowledged this on the record at sentencing. That's in the record at page 138. And then the court made clear that it would have imposed the same sentence even if it had erred. That is sufficient under this court's acknowledged method in Guzman-Rendon. And then additionally, the court's sentence would have been harmless under the more rigorous Ibarra-Luna standard here because the court, again, made its statement that this would have been the same sentence it would have imposed for the same reasons. And this court went through its various reasons supporting the sentence. That was the defendant's criminal history. It has a young age of 26 at the time. That was also that prior sentences, which included this six-month sentence, had not sufficiently deterred him. How does this translate in terms of actual time to be served? So if the court would have sustained the objection, it could have imposed a discretionary of six months to account for that six-month sentence, but it wasn't required to do so. It wasn't a mandatory departure. It was just discretionary. It would not have changed his criminal history category. He still would have been at a criminal history category of six. And this court made clear that the prior sentences had not deterred him. So the record shows that the court would have imposed the same sentence for the same reason, as well. Turning to the partially completed offense reduction, Mr. Schultz was not eligible for partially completed offense reduction for two reasons that the court found. Both of those findings were more than plausible in light of the record. First, the underlying substantive offense was wire fraud, and all 19 underlying wire frauds were completed. That should end the inquiry here. 2X1.1 defines the substantive offense as the offense that the defendant was convicted of conspiring to commit. That was wire fraud here. That wasn't theft. He wasn't convicted of a theft offense. He's convicted of a wire fraud offense, and a success of a wire fraud scheme is not an element of 1343. You agree that we must remain to correct the written judgment in the oral pronouncement? That's correct, Your Honor. We agree that that does need to be addressed, even if you prevail on all these arguments that you've made. That's correct, Your Honor. That does need to be amended in the judgment by the district court. So as we talked about, the underlying wire fraud offenses here are complete, and there's no larger scheme at play here. Mr. Schultz makes this argument that essentially what he's arguing is that because he didn't inflict all the intended harm, that we have to treat this as a larger scheme. But this court has rejected that argument in two different cases, United States v. Popa and United States v. Thomas. Both of those involved similar situations where the defendant is arguing that he actually intended more criminal conduct. So in other words, in one of these, it was an attempting to possess unauthorized access devices. He's arguing why actually intended to use those unauthorized access devices. But the court held that that's not the inquiry here. It's what is the substantive offense that he's convicted of, or what is the substantive offense underlying the conspiracy? It's not just whether there's criminal activity remaining to inflict some additional intended harm. And that's what we have here. It doesn't matter that he didn't actually procure some of the additional vehicles. It's whether he's completed the underlying substantive offenses, which he clearly did here, and the district court's finding on that issue is more than plausible. And even if it wasn't, the district court made an alternative finding that the record shows that, quote, any disruption in the offense occurred because of law enforcement or the victim, and therefore there should be no reduction. There's no reduction when law enforcement or the victims intervene when the conspiracy participants are on the verge of completing the offense, and that's exactly what happened here. You have Jaguar, where Mr. Davis, a co-conspirator, tries to pick it up using his real identification, and the dealer declines to give it to him with his real identification. That's clearly victim intervention. You also have the four vehicles that were purchased on January 18th, which were directly not released because of intervention from law enforcement. Mr. Schultz was arrested in one of the vehicles, another vehicle that was purchased from that same batch, and when he was found, he had paperwork related to the other ones, and fortunately Manheim and law enforcement were able to prevent those other vehicles from being sold. But even while he's in jail, Mr. Schultz is calling his co-conspirators on the phone, trying to find people to pick up some of those other vehicles. He's still trying to do everything he can, but fortunately the victim and law enforcement were able to prevent those additional thefts. So in sum, the district court's findings that the conspiracy participants were on the verge of completing the thefts, but for intervention, is entirely plausible. So there's two alternative grounds for this court to affirm, but the government would submit that the most at play that has to be. Let me ask you a question. On the review of a clear error here, suppose the district court had gone the other way on this issue. Would that have been a reversible error? If it had gone the other way on the finding about the offenses being completed, or the underlying substantive offense are either, are you asking? The court has made a decision here to reject the defendant's position, and we say it was reviewed by clear error. One could say implicitly that there's a range of discretion of the district court to have operated that. This is a predicate to the question ultimately. This case got to go back because of the concurrent problem versus consecutive sentences, where there's a considerable bite there. We have an operative principle that when we interfere with the structure of the sentences by district judges, that we frequently leave to the district judges the ability to reconstruct that sentence itself. In other words, you may make some adjustments here, you may make some other adjustments there, falling under the discretion that's implicit in clear error review. If I'm correct here. We do think that if it would have come out the other way, it would have been clear error under the cases that have analyzed when this reduction applies. This is very similar to the other cases where it hasn't applied because the underlying offense was either complete or because it was thwarted by law enforcement. So to the extent it conflicts with those cases such as Popa and Thomas and Oates and Blackburn both involved fraud offenses or bank fraud, to the extent it would conflict with that, we would submit that it would be clear error under those scenarios. So this isn't the case like John where the underlying actually use the access devices. So to the extent it conflicts with any of those cases, yes, it would be clear error under those scenarios. Unless the court has further questions on either of those issues, I will see the rest of my time. All right. Thank you. Mr. Biggs, you say some time for a bubble. A couple things I'd like to address. One in connection with the court's acknowledgment of the government's position is that any error on the determination that the prior offense was criminal history rather than relevant conduct was harmless. To the extent it was an error, their position is that the judge considered this on the record. And having reviewed the transcript, I will point out that I did note that this has significance because he did six months on this case without really further elaboration. And then I discussed why it should apply on the merits. And the court just says, okay, very good. I'm not sure it's that expressed that he acknowledged exactly, you know, I'm considering 114 months. This is not near enough as perhaps was indicated. I did point that out in the addendum in my briefing to the court. I would note that there is some, perhaps some ambiguity in the way the court made its findings. We had, of course, five objections. This is not a scenario like the case the government's talking about where we have one enhancement at issue. The guidelines were either eight to 14 months or they're 46 to 57 months. The judge says, okay, well, whether this prior conviction qualifies is something under the categorical approach, I don't really care. I'm giving 46 months. That is very clear. Those are two scenarios put right in front of the judge. Here we're juggling five different objections. And it's not at all clear that all the different ranges of all the possible permutations have been appropriately considered. And in the statement of reasons, the court says, even if my guideline calculations are incorrect, this would be the sentence I would give. Well, you could argue that this is not exactly a guideline calculation. This is really a determination about whether it's relevant conduct or criminal history. It doesn't affect the range. It's not a calculation, unlike the other objections, which actually affect the range. This is a situation where the judge, if he had been apprised of that it should count as relevant conduct in criminal history, would the court in its decision-making have decided to calculate that the guidelines are not correct. Additionally, if I were to leave the court with anything, it's that the government is effectively arguing that partially completed offense cannot apply for wire fraud, mail fraud, or bank fraud because there's no loss amount, no actual loss required to establish an offense. And when you think about how many prosecutions for conspiracy to commit those crimes and how much money is often at stake, millions and millions, and when there's a huge discrepancy between the amount intended and the amount actually procured, and there's no recourse, no check on that in sentencing consideration, I find that very intent of the guideline, which expressly uses the term fraud as part of a larger fraud. And finally, I would point out that the interruption of law enforcement, that's not the answer. It has to be, the crime has to be on the verge of completion for that to kick in. Obviously, every time these schemes are interrupted by law enforcement, that happens every time. That doesn't really explain when we should apply this reduction or not. And they say you should not apply it if they're on the verge of completion. And I would submit that they're not on the verge of completion in connection with these eight cars. When they've clicked a few buttons, they have cars in Florida, cars in Georgia, they have to go get these cars. Even the cars here, Mannheim didn't release the cars, but even if they had released them, still, someone's going to have to go to the dealership and go get them. These are actually the hardest parts of the whole scheme, not clicking a few frenetic clicks. And so we would submit that it was not on the verge of completion and that a partially completed office reduction would be appropriate. And we would ask the court respectfully to remand to the district court for re-sentencing. Thank you. Thank you, Mr. Biggs. And we noticed that your court appointed, and we wish to thank you for your work on behalf of your client and your willingness to take the appointment. Your case is under submission.